IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

DANIEL POTEAT, SR.
    Plaintiff,

v.     Civil Action No. TMD 11-3486M

CAROLYN COLVIN,[1]
Commissioner of Social Security,
    Defendant.

MEMORANDUM OPINION GRANTING DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>

Daniel Poteat, Sr. ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Titles XVI of the Social Security Act, 42 U.S.C.§§ 1381-83(c). Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 14) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 16). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

I. <u>Procedural History</u>

Plaintiff filed his application on December 10, 2008 alleging disability since December 1,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this lawsuit.

2008 due to chronic back pain, numbness in left leg, weakness in left hand and arm, breathing problems and hepatitis C. R. at 16, 98-100, 113. His claim was denied initially and on reconsideration. R. at 55-58, 59-60. On June 24, 2010, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff and a vocational expert ("VE") testified. R. at 25-52. Plaintiff was represented by counsel. In a decision July 12, 2010, the ALJ denied Plaintiff's request for benefits. R. at 13-24. The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review. R. at 1-4.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim for SSI using the sequential process set forth in 20 C.F.R. § 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since his application date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: human immunodeficiency virus (HIV+), hepatitis C, depression and cocaine abuse. At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff had no past relevant work. At step five, the ALJ concluded that, given his residual functional capacity ("RFC"), Claimant was capable of performing jobs that existed in significant numbers in the national economy. Accordingly, he concluded that Claimant was not disabled. R. at 13-24.

## III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.

42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

## IV. Discussion

Plaintiff argues that (1) the ALJ erred by failing to give controlling weight to the opinions of his treating psychiatrist, Dr. Kim and his treating primary care physician, Dr. Scott; (2) the ALJ's findings at steps 2, 3, 4 and 5 of the sequential evaluation were not supported by substantial evidence;[2] (3) the ALJ's mental RFC findings were inadequate; (4) the ALJ's hypothetical to the VE was incomplete; and (5) the ALJ's credibility findings were not based on substantial evidence.

    A.    Treating Psychiatrist

---

[2] The Court finds that Plaintiff's arguments in these respects are largely reiterations of his other arguments summarized above. To the extent Plaintiff offers slightly different assertions or points to other evidence in support

3

The standard for reviewing and weighing medical opinions is set forth in 20 C.F.R. § 416.927(d), which states in pertinent part:

> [W]e give more weight to opinions from your treating sources, since these sources are ... most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone ... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight ... We will always give good reasons ... for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(d)(2). Therefore, opinions of treating physicians which are supported by medically acceptable techniques and are not inconsistent with other substantial evidence in the record are to be given great weight. Conversely, SSR 96–2p provides that a medical opinion can *only* be given controlling weight if it is (1) an actual opinion; (2) from a treating source; (3) well supported by objective evidence; and (4) not inconsistent with other substantial evidence in the case. 20 C.F.R. § 404.1527(d)(2) outlines the factors that an ALJ must consider when determining whether to afford a treating source's opinion controlling weight. The factors are as follows: (1) the "[l]ength of the treatment relationship and the frequency of examination[;]" (2) the "[n]ature and extent of the treatment relationship[;]" (3) the extent to which the opinion is supported by medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician (because the ALJ generally gives more weight to specialists); and (6) "any [other] factors ... which tend to support or contradict the

---

of his arguments, the Court has reviewed them and finds them to be without merit.

4

opinion." 20 C.F.R. § 404.1527(d)(2).

Dr. Kim began treatment of Plaintiff on October 6, 2009 for stress, depression and problems sleeping. R. at 246. On that date, he diagnosed Plaintiff with Bipolar II disorder/depressed and assigned him a GAF of 50. R. at 267. Dr. Kim completed a Medical Assessment of Ability to do Work-Related Activities (Mental) in which he opined Claimant had only a "fair" ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, maintain attention and concentration, understand, remember and carry-out detailed or complex job instructions and relate predictably in social situations. R. at 243-44. The ALJ thoroughly summarized Dr. Kim's findings but specifically noted that there were no treatment notes or any other objective medical documentation to support his conclusions. R. at 19. Indeed, Plaintiff does not point to any underlying support, but only Dr. Kim's conclusions. In fact, the only records of Dr. Kim that are in evidence are an evaluation in October, 2009 and another in August, 2010. R. at 264-67, 308-10. As the Commissioner properly points out, it is questionable whether one examination (or two) would even qualify Dr. Kim as a treating physician. *See Yost v. Barnhart*, 79 Fed. Appx. 553 (4th Cir. 2003) ("First, Dr. Massenburg evaluated Yost on only one occasion. Thus, he is not Yost's treating psychiatrist."); *Ketcher v. Apfel*, 68 F.Supp.2d 629, 648 (D. Md. 1999). For these reasons, the ALJ did not err in failing to give Dr. Kim's opinion controlling weight.

    B.    <u>Treating Primary Care Physician</u>

Plaintiff's argument that the ALJ erred in not affording the opinions of Dr. Scott controlling weight fails for similar reasons. At the outset, it appears that Dr. Scott saw

Claimant on four occasions: January 25, 2010, February 1, 2010, February 19, 2010, and March 1, 2010. R. at 279-80. Accordingly, the treatment relationship was relatively short. *See Sims v. Astrue*, No. JKS 09-3195, 2011 WL 1231157 at *2 (D. Md. Mar. 29, 2011) (*citing Ketcher*, 68 F.Supp.2d at 648 ("A treating physician is a medical professional that examines a patient on several occasions over a long period of time."). In fact, when he completed the assessment on February 1, 2010 upon which Plaintiff so heavily relies, R. at 247-50, Dr. Scott had only first seen Claimant one week prior.

In that opinion, Dr. Scott opined that since March 9, 2009, Claimant could lift and carry only five to ten pounds, could lift no weight frequently and a maximum of five pounds occasionally, that he could stand or walk only one hour total and for only ten to fifteen minutes without interruption, could sit for only four hours total and only twenty minutes without interruption and could never climb, balance, stoop, crouch, kneel, or crawl and could not be exposed to extreme cold, vibration, and workplace hazards. R. at 247-49. These findings were clearly more restrictive that the ALJ's RFC which included the following limitations: Claimant can perform light work except that he was limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently, sitting up to six hours and standing/walking six hours in an eight hour workday. R. at 17.

In considering Dr. Scott's opinion, the ALJ first found significant that Dr. Scott only saw Claimant twice in 2010 as noted above. R. at 20. Additionally, not only were Dr. Scott's opinions more limited than those of Dr. Osei-Boateng who examined Claimant on February 9, 2009, but they were more limited than Claimant himself testified to. *See, e.g.* R. at 193

6

(reporting that he can lift up to twenty pounds; stand for about a half-hour at a stretch, walk for up to three blocks before pain). Claimant himself made no mention of limitations in any postural activities. R. at 192-93. Accordingly, the ALJ found that there was contradictory persuasive evidence in the record. While the Court recognizes thatDr. Osei-Boateng saw Claimant only once at the request of Maryland Disability Services, it is not the job of the Court to reweigh the ALJ's findings. *See Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001) (citation omitted) (the reviewing court should not "'undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of' " the agency). This is not a situation where the physician upon which Claimant relies treated him over an extended period of time. *See Campbell v.* Bowen. 800 F.2d 1247, 1250 (4th Cir. 1986) ("[T]he opinion of a treating physician is entitled to more weight because it reflects a judgment based on continuing observation *over a number of years.*") (emphasis added). The Court finds the ALJ's decision to not afford Dr. Scott's opinions much weight is supported by substantial evidence.

  C.  <u>Mental RFC</u>

Plaintiff contends that the ALJ's RFC findings regarding his mental impairment were inadequate because it only included a limitation for no interaction with the public. R. at 17. He argues that the ALJ was required to make detailed findings regarding his ability to understand, carry-out and remember instructions, use judgment in making work-related decisions, interact with co-workers and supervisors, or deal with changes in a routine work-setting. However, as S.S.R. 96-8p makes clear: "When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is

7

such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." Here, as the Commissioner points out, Claimant's allegations of a mental impairment were fairly limited. He indicated that he follows instructions "well", that he may have to ask "once more" to follow spoken instructions and that he gets along with authority figures "very well." R. at 123-25. He further indicated that he handles stress "good at times", handles changes in routine "good" and that he has not noticed any unusual behaviors or fears. R. at 125. Furthermore, Claimant indicated that he stopped working due to physical, not mental limitations. R. at 28. Apart from the evaluation of Dr. Kim discussed above, Claimant does not point to any other evidence in the record which would support mental RFC limitations other than that found by the ALJ.

  D. <u>VE Hypothetical</u>

  First, Plaintiff argues that the hypothetical to the VE was incomplete from a mental perspective because he did not include the limitations expressed by Dr. Kim and did not specify with whom Claimant could not interact. Again, with respect to Dr. Kim's limitations, the argument fails for the reasons discussed above. Additionally, contrary to Plaintiff's assertion, the hearing transcript is clear that the ALJ included a hypothetical with an individual who cannot interact *with the public.* R. at 47. Indeed, he gave examples of positions that would be eliminated based on no interaction with the public such as cashiers and operators. *Id*. Plaintiff also argues that the ALJ improperly failed to include in his hypothetical the need for the use of a cane to ambulate. In his opinion, the ALJ stated that although Claimant carries a cane, it is not needed for walking. R. at 20. This finding is supported by Dr. Osei-Boateng's February,

2009 examination findings that Claimant's gait was normal and he did not require an assistive device to ambulate. R. at 194. While Dr. Scott prescribed Claimant a cane, again the ALJ's decision to not afford his opinions much weight is supported by substantial evidence.

  E.  Credibility

  Finally, Plaintiff argues that the ALJ erred in finding Claimant not credible. The Court disagrees. The regulations describe a two-step process for evaluating symptoms. *See* 20 C.F.R. §§ 404.1529 and 416.929; *see also,* SSR 96-7p; *Craig v. Chater,* 76 F.3d 585, 592-96 (4th Cir.1996). The ALJ must first consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms. If such an impairment is established, the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the individual's ability to do basic work activities. The latter step requires consideration of both the objective medical evidence and subjective evidence of a claimant's pain or other symptoms, and, while objective medical evidence may be "crucial" in evaluating the intensity, persistence, and limiting effects of symptoms, *Craig v. Chater*, 76 F.3d at 595, subjective complaints may not be discredited solely because they lack objective support. *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006).

  Examination of the record in this case establishes the ALJ properly assessed Plaintiff's credibility, concluding that his statements concerning the intensity, persistence and limiting effects of his symptoms were not credible. R. at 18. Contrary to Plaintiff's argument, the ALJ noted that despite his assertion that he had been drug-free for seven years, the medical evidence

9

showed cocaine use in 2009. He also noted that Claimant stopped working in 1995 even though his alleged onset date was in 2008. In addition, the consultative examination in 2009 was largely unremarkable apart from slight weakness in Claimant's left leg and mild objective weakness in his left arm. R. at 194-95. As mentioned above, Claimant was found to walk with a normal gait and did not need an assistive device. While examination revealed some tenderness in his spine and some restricted range of motion, R. at 282, 299, 303, the clinical findings simply do not support the allegations of disabling pain presented by Claimant. *See, e.g.* R. at 237-38 (normal ambulation), R. at 299 (normal manual muscle strength), R. at 303 (negative straight leg raises and normal gait).[3]

## V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.

Date: June 3, 2013  _____
THOMAS M. DIGIROLAMO
United States Magistrate Judge

---

[3] The Court has also considered Plaintiff's submission of new evidence to the Appeals Council and finds that it does not change the Court's opinion in this matter.